IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MICHAEL C. FOWLER,

    Petitioner,

v.  No. 1:19-cv-01189-JDB-jay

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Michael C. Fowler,[1] has filed a pro se habeas corpus petition (the "Petition") pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 1.)[2] For the following reasons, the Petition is DENIED.

BACKGROUND

On March 13, 2017, a grand jury for the Western District of Tennessee charged Fowler in six counts of a seven-count indictment. (*United States v. Fowler*, No. 1:17-cr-10024-JDB-1 (W.D. Tenn.) ("No. 17-cr-10024"), D.E. 3.) He was charged in Count 1 with conspiracy to possess with intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a) and 846. The remaining counts alleged firearm offenses.

In October 2018, the Defendant entered into a plea agreement with the Government. (*Id.*, D.E. 132.) By that document, Fowler agreed to plead guilty to Count 1 and to waive his right to

---

    [1] The Court will refer to Fowler as "the Defendant" in its discussion of the underlying criminal case.

    [2] Unless otherwise noted, record citations are to documents filed in the instant action.

appeal his sentence, except in limited circumstances. The Government agreed to move for and recommend reductions in the Defendant's offense level for acceptance of responsibility and to dismiss the remaining counts. The parties stipulated that the most readily provable drug quantity was 500 grams to less than 1.5 kilograms of methamphetamine, but they acknowledged that the Court would make the final determination.

At the change of plea hearing, the undersigned conducted the Rule 11 colloquy, *see* Fed. R. Crim. P. 11, making certain that the Defendant understood the charge to which he was pleading guilty, the minimum and maximum penalties, the rights he was giving up by pleading guilty, and the basics of sentencing. (*Id.*, D.E. 174.) The prosecutor provided the factual basis for the plea. Fowler confirmed that he entered into the plea agreement freely and voluntarily following review of the plea agreement with his attorney and that he was in fact guilty of the crime to which he was confessing.

The Defendant was represented during the plea stage by Matthew Maddox. Attorney Daniel Taylor was subsequently appointed as Fowler's attorney for the sentencing phase.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR"). (No. 1:17-cr-10024-JDB-1, D.E. 156 .) The PSR advised that the quantity of drugs attributable to the Defendant was "at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine[.]" (*Id.*, D.E. 156 at PageID 431.) A base offense level of 36 was therefore assigned pursuant to §§ 2D1.1(a)(5), (c)(2) of the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."). The offense level was increased by 2 because the Defendant possessed "a dangerous weapon." (*See* U.S.S.G. § 2D1.1(b)(1)). Three points were subtracted for the Defendant's acceptance of responsibility. With a total offense level

of 35 and a criminal history category of II, the Guidelines' imprisonment range was calculated to be 188-235 months.

Attorney Taylor filed a position paper "ask[ing] the Court to accept the recommended most readily provable amount of narcotics submitted in the plea agreement." (No. 1:17-cr-10024-JDB-1, D.E. 161 at PageID 459.) He posited that the resulting Guidelines range would be "108 to 135 months," restricted to "120 to 135 months" due to the ten-year statutory minimum.[3] (*Id.*, D.E. 161 at PageID 459.) Taylor also "object[ed] to the statement in the [PSR] indicating that [Fowler] is a member of the Aryan Brotherhood street gang."[4] (*Id.*, D.E. 161 at PageID 459.) He further presented for the Court's consideration the fact of his client's mental and physical health issues and his inability to pay a fine.

A sentencing hearing was held on March 14, 2019. (*Id.*, D.E. 164.) Defense counsel and counsel for the Government argued for a drug quantity of more than 500 grams but less than 1.5 kilograms of methamphetamine, as stipulated to in the plea agreement. (*Id.*, D.E. 172 at PageID 528-33, 536.) Fowler's counsel also brought to the Court's attention the fact that the Defendant suffered from serious mental disabilities. (*Id.*, D.E. 172 at PageID 537.) He requested that his client be housed in a prison where he would have access to mental health programs. (*Id.*, D.E. 172 at PageID 541.) The undersigned accepted the parties' drug-quantity recommendation and found

---

[3] Counsel's calculation did not include a two-level increase for possession of a dangerous weapon. As the sentencing hearing, counsel acknowledged that his "[c]lient admits there was a weapon involved." (No. 1:17-cr-10024-JDB-1, D.E. 172 at PageID 535.)

[4] At the sentencing hearing, the Court ordered the probation officer to amend the PSR's reference to the Aryan Brotherhood street gang to include Petitioner's denial that he was a member of that group. (No. 1:17-cr-10024-JDB-1, D.E. 172 at PageID 539.) After judgment was entered, the probation officer submitted a revised PSR to reflect the Court's instruction. (*Id.*, D.E. 167 at PageID 502.) Citations herein are to the pre-judgment PSR rather than to the revised PSR.

that the applicable Guidelines range was 151 to 188 months. (*Id.*, D.E. 172 at PageID 545, 551.) Upon consideration of the parties' arguments, the advisory range, and the sentencing factors set forth in 18 U.S.C. § 3553(a),[5] the undersigned imposed a bottom-of-the-range sentence of 151 months in prison, to be followed by five years of supervised release. (*Id.*, D.E. 164.) Fowler appealed. On September 4, 2019, the Sixth Circuit dismissed the appeal "based on the appellate-waiver provision in Fowler's plea agreement." (*Id.*, D.E. 178 at PageID 590.)

## DISCUSSION

The Petition was filed on August 30, 2019.[6] The pleading asserts that attorney Taylor rendered ineffective assistance by failing to "ask for a downward variance because of [Petitioner's] mental disability" (Claim 1), failed to argue Petitioner's "dysfunctional childhood" at sentencing (Claim 2), failed to file a notice of appeal after Petitioner directed him to do so (Claim 3), and "rushed [him] through [the] P.S.I. and final sentencing" (Claim 4). (D.E. 1 at PageID 4-8.)

On November 4, 2019, the Court undertook a preliminary review of the Petition. (D.E. 5.) Regarding Claim 3, the Court found that the record in Petitioner's criminal case belied his assertion

---

[5] Pursuant to 18 U.S.C. § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors: "the nature and circumstances of the offense and the history and characteristics of the defendant; . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct[,] . . . to protect the public from further crimes of the defendant[,] and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

[6] The inmate filed the Petition while his direct appeal was pending. The appeal was dismissed five days later.

4

that he received the ineffective assistance of counsel for counsel's failure to file a notice of appeal after Petitioner allegedly directed him to do so. More to the point, the record showed that a notice of appeal was filed, albeit by Fowler himself, and that Taylor was later appointed to represent him on appeal. The Court found that the inmate could not demonstrate that he suffered any prejudice from counsel's failure to file a notice of appeal and dismissed the claim.

By the same order, the Court directed the Respondent, United States of America, to respond to the remaining claims. On December 31, 2019, the Government filed its response (the "Response"), accompanied by an affidavit from Taylor and a sealed document from the criminal case. (D.E. 12; D.E. 12-1; D.E. 13.) Respondent argues that Petitioner is not entitled to relief because none of his claims have merit.

Petitioner filed a reply on January 15, 2020 (the "Reply").[7] He insists that counsel performed deficiently in the ways alleged in the Petition and that counsel's conduct prejudiced him.[8] (D.E. 14.)

---

[7] Over one and one-half years after submitting the Reply, Petitioner filed an additional brief reiterating most of the arguments he presented in the Reply. (D.E. 18.)

[8] In addition to arguing the merits of Claims 1, 2, and 4, the Reply also asserts that counsel rendered ineffective assistance by promising Petitioner that he would receive a sentence of 120 months' incarceration. (D.E. 14 at PageID 91.) Because the claim was raised for the first time in the Reply, it is waived. *See United States v. Pineda-Parada*, No. 5:13-cv-07309-JMH-HAI, 2014 WL 7405700, at *4 (E.D. Ky. Dec. 30, 2014) (petitioner's arguments were waived because they were first asserted in his reply) (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

But even if the claim were properly before the Court, it would be denied because Petitioner suffered no prejudice from counsel's alleged promise. By the plea agreement, Fowler affirmed that he "underst[ood] and agree[d] that the Court will make the final determination of facts as to any sentence and as to any mitigating and aggravating factors concerning the sentence imposed." (No. 1:17-cr-10024-JDB-1, D.E. 132 at PageID 350.) In addition, the undersigned corrected any misunderstanding the Defendant may have had about the potential sentence by informing him at the change of plea hearing what the minimum and maximum statutory penalties were and by

Upon consideration of the parties' submissions and the record in the underlying criminal case, the Court determines that Petitioner's claims are without merit as they are belied by the record. No evidentiary hearing is warranted.

I.     Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.* Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2)

---

explaining to him that the Guidelines range was advisory only and that the appropriate sentence would be determined by the Court. (*Id.*, D.E. 174 at PageID 567-69, 574-75.)

"that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. *Strickland*'s two-part standard is not confined to claims of trial counsel ineffective assistance, but also applies to claims of attorney error on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

II.     Claim 1

Petitioner asserts that counsel rendered ineffective assistance by failing to ask for a downward departure from the applicable Guidelines imprisonment range on the ground that he suffers from mental disabilities. Respondent argues that the claim is belied by the record. The position is well-taken.

The record in the criminal case shows that the issue of Petitioner's mental health was brought to the Court's attention throughout the proceedings. Prior to the plea, the Court received a forensic report (the "Forensic Report") from the Federal Bureau of Prisons which recounted, among other things, the Defendant's history of psychiatric diagnoses and psychotropic medications. (D.E. 13-1.) The report concluded that Fowler was fit to stand trial and sane at the time of the offense. At the sentencing stage, the probation officer's recommendation of a sentence at the low end of the advisory Guidelines range was accompanied by the following explanation:

> The defendant suffers from multiple mental and emotional health disorders. He has a significant history of substance use and abuse and has participated in prior drug treatment programs but would benefit from additional monitoring and treatment. The defendant received social security disability benefits but would benefit from vocational training.

(*Id.*, D.E. 156-1 at PageID 450.) The probation officer also submitted an addendum to the PSR containing supplemental "[i]nformation received from the West Tennessee Detention Facility (WTDF)." (Id., D.E. 156-2 at PageID 452.) In part, the "[i]nformation received from WTDF indicate[d] that the defendant's active problems include depression, hallucinations and schizoaffective disorder (mixed type)," and that his "prescriptions include[d] bupropion (commonly used to treat depression and help people quit smoking) and quetiapine (commonly used to treat schizophrenia)." (*Id.*, D.E. 156-2 at PageID 453.)

8

Counsel's own efforts to emphasize Fowler's mental health struggles as a sentencing factor are well-documented. In his position paper, counsel catalogued the Defendant's mental health diagnoses, noted that Fowler had in the past been "civilly committed" to mental health treatment programs several times, represented that his client had been on "Social Security Benefits since 2010" based on "a mental health disability," and "request[ed] that the Court recommend that [Fowler] be allowed to serve his sentence where he can obtain mental health counseling and treatment." (*Id.*, D.E. 161 at PageID 460-61.) At the sentencing hearing, counsel reiterated his argument that the undersigned should take into consideration the Defendant's mental health disorders in determining an appropriate sentence. (*Id.*, D.E. 172 at PageID 537.)

Petitioner has not demonstrated that counsel rendered ineffective assistance. Firstly, there is no evidence that counsel performed deficiently. To the contrary, although counsel did not ask for a downward departure from the low-end of the advisory range, he argued that the sentence should reflect the totality of his client's background and mental health struggles. The undersigned was persuaded and, in consideration of the advisory range and all of the sentencing factors-- including "the fact that Mr. Fowler does have . . . some mental health issues"--imposed a sentence at the bottom of the Guidelines range. (*Id.*, D.E. 172 at PageID 548.) Secondly, Petitioner has not shown that he was prejudiced by counsel's conduct. The undersigned was fully apprised of Fowler's mental health struggles at sentencing. There is therefore no reasonable probability that a below-Guidelines sentence would have been imposed had counsel asked for one. As the inmate has not established a deficiency in counsel's performance or prejudice resulting from counsel's conduct, Claim 1 is DENIED.

III.     Claim 2

As indicated above, Petitioner asserts that counsel rendered ineffective assistance by failing to raise at sentencing his "dysfunctional childhood." (D.E. 1 at PageID 5.) He posits, specifically, that counsel should have argued that Petitioner "was physically, mentally, and sexually abused as a child by [his] father." (*Id.*) He alleges that he "was very firm [with counsel] on asking for this." (*Id.*) Respondent does not deny that counsel did not argue Fowler's dysfunctional childhood in his position paper or at the sentencing hearing. The Government maintains, however, that the claim is without merit because Petitioner cannot show that he was prejudiced by counsel's conduct. The Court agrees.

In assessing whether Fowler received ineffective assistance, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. The Court therefore assumes, without deciding, that counsel performed deficiently by failing to raise Petitioner's dysfunctional childhood at sentencing. Fowler did not, however, suffer any prejudice as a result of counsel's conduct. The undersigned was adequately informed by other sources about Fowler's childhood and his assertions that he was emotionally, physically, and sexually abused by his father. The Forensic Report indicated that, as a child, the Defendant had suffered severe physical abuse by his father. (No. 1:17-cr-10024-JDB-1, D.E. 13-1 at PageID 65.) The PSR likewise reported physical abuse, and further noted Petitioner's assertion that his father had also emotionally and sexually abused him. (*Id.*, D.E. 156 at PageID 441.) Because the undersigned took that information into account in determining an appropriate sentence, there is no reasonable probability that Petitioner would have received a lesser sentence had counsel done more. Claim 2 is DENIED.

IV.     Claim 4

Petitioner posits that counsel was ineffective when he "rushed [him] through [the] p.s.i. and final sentencing." (D.E. 1 at PageID 8.) In support, he alleges that, at the presentence interview with the probation officer, counsel "rushed [him] and the p.s.i. lady while watching his watch," and that Petitioner "had lo[ts] more to add to [to] p.s.i. and she wanted more." (*Id.*) He also reiterates, without elaborating, that counsel "rushed [him] at final sentencing."[9] (*Id.*)

Respondent argues that counsel did not perform deficiently in the ways alleged. The Government asserts that Maddox, not Taylor, "participated in the pretrial interview with him as shown on the first page of the Presentence Report." (D.E. 12 at PageID 57.) As for reviewing the PSR with his client, Taylor avers in his affidavit that he had "a lengthy meeting" with Petitioner "at the prison" at which he "went over [the PSR] page by page." (D.E. 12-1 at PageID 60.) Counsel represents that he "asked Mr. Fowler if anything was incorrect in the report and walked him through the sentencing calculations" and "answered any questions and explained how the sentencing would operate." (*Id.*) Counsel also insists that he did not rush Petitioner prior to the sentencing hearing, averring that he "checked with [Fowler] before the hearing and he still had no questions or concerns other than what did [counsel] think the Judge would do." (*Id.*) The Government further points out that Petitioner acknowledged at the sentencing hearing that he had reviewed the PSR with his attorney and that he did not have any objections apart from those raised by counsel. Respondent further maintains that the inmate has not established prejudice because

---

[9] The allegations in support of Claim 4 also include the assertion that Petitioner "was stabbed while @ Mason, TN C.C.A. and asked [counsel] to help and he said he got ti[e]d up and forgot to contact someone on my behalf." (D.E. 1 at PageID 8.) Because the inmate does not explain how his federal sentence was impacted by counsel's failure to contact the jail, he has not adequately alleged ineffective assistance in that regard.

11

he has "fail[ed] to allege any additional information he would have raised before the Court given additional time." (D.E. 12 at PageID 58.)

In the Reply, Petitioner maintains that it was Taylor, not Maddox, at the presentence interview with the probation officer. He insists that Maddox "gave [him] a pre-P.S.I. form," but that by the time of the "P.S.I. interview" Taylor was his attorney. (D.E. 14 at PageID 83-84.) The Reply does not address the Government's argument that Petitioner has failed to identify what additional information he would have wanted in the PSR had counsel not "rushed" him.

Even assuming that counsel performed deficiently in the ways alleged, Petitioner has not established that he was prejudiced. For one thing, the Court allowed Fowler an opportunity at the sentencing hearing to correct any misstatements in the PSR or to address any omissions, but he did not do so. (No. 1:17-cr-10024-JDB-1, D.E. 172 at PageID 543-44.) Additionally, he has not alleged, let alone demonstrated, what was incorrect in the PSR or what was omitted from it as a result of counsel's conduct. Claim 4 therefore fails on *Strickland's* prejudice prong and is DENIED.

For all of these reasons, the Petition is DENIED. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[10]

IT IS SO ORDERED this 2nd day of August 2022.

s/ J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE

---

[10] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.